IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARK MCCLOUGH,

      Petitioner,

v.                          Case No. 11-3022-SAC

DAVID R. MCKUNE and
DEREK SCHMIDT,

      Respondents.

**MEMORANDUM AND ORDER**

This case comes before the Court on Petitioner's motion for a writ of habeas corpus pursuant to 28 USC § 2254. Petitioner, in custody at Lansing, contends that he was denied his right to effective assistance of counsel.

**Facts**

The relevant facts, as determined by the Kansas Court of Appeals in Petitioner's state collateral appeal, follow.

> The State filed charges against McClough in three separate cases. The first case arose from a robbery of a convenience store on May 22, 2004. The second case arose from an aggravated robbery of a video store on June 7, 2004. The third case arose from McClough's escape from custody while being held on these charges. Trial in all three cases was set for May, 9, 2005.
> On the morning of trial, the prosecutor stated an agreement to consolidate the cases for trial. McClough's counsel confirmed the agreement, telling the trial court she had "discussed this" with McClough and that he "wanted to have them consolidated all in one case for trial." McClough was present in court when his counsel made this statement. The trial court granted the motion to consolidate the cases for trial, although the case files remained distinct, with separate charging documents and separate journal entries of judgment.

> McClough refused to remain in the courtroom for trial. Despite extensive admonitions from the trial court, McClough asked to return to his jail cell. The trial court allowed McClough to absent himself from the courtroom, but it directed that McClough be brought to the courtroom immediately if he indicated a desire to attend the trial.
> On the second morning of trial, McClough again asked to return to his cell. The trial court emphasized that this was "not a final decision on your part. If you want to be here, then we'll certainly make changes and get you over here." On the third morning of trial, the trial court told McClough that his counsel was "getting ready for the defense," and that jury instructions and closing arguments would follow. McClough only responded, "I want to go back." The trial was concluded in McClough's absence, and the jury returned guilty verdicts in all three cases.
> McClough filed a motion for new trial. McClough's counsel stated at the hearing that McClough had "informed me it was his desire to be present for the verdict." The trial court noted that the trial featured a "videotape of the crime taking place … and it may very well be [McClough] didn't want to sit at counsel table and have the jury look at the videotape and look at him and look back at the videotape and say, guess what? That's this defendant doing that." The trial court acknowledged it did not know the "reason [McClough] was making this choice," but it concluded that because McClough could have stated his wish to be present for the reading of the verdict, it was "his fault for not letting us know." The trial court overruled the motion for new trial.
> McClough appealed in all three cases, which were consolidated on direct appeal. Our court affirmed the convictions. See *State v. McClough*, Nos. 96,322, 96,323, 96,324, unpublished opinion filed July 6, 2007. McClough's petition for review was denied by the Kansas Supreme Court.

*McClough v. State*, 2010 WL 2978036, 1 (July 23, 2010). Petitioner has not shown clear and convincing evidence to rebut the presumption of correctness attached to the state court's factual determinations. *See Freisinger v. Keith,* 473 Fed.Appx. 846, 848, 2012 WL 1072317, 3 (10th Cir. 2012).

Convicted of two counts of aggravated robbery and one count of aggravated escape from custody, Petitioner was sentenced to a term of 282

months incarceration. After his direct appeal was denied, he filed an unsuccessful motion for post-conviction relief pursuant to K.S.A. 60-1507 in the District Court of Sedgwick County, alleging multiple claims of ineffective assistance of counsel. The Kansas Court of Appeals affirmed that denial, and the Kansas Supreme Court denied review. Petitioner thus exhausted the claims he made in state court.

**AEDPA Standard**

This matter is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA imposes a "highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. ––––, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010) (citation and internal quotation marks omitted). Under AEDPA, where a state prisoner presents a claim in habeas corpus and the merits were addressed in the state courts, a federal court may grant relief only if it determines that the state court proceedings resulted in a decision (1) "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to clearly established Federal law" when: (a) the state court " 'applies a rule that contradicts the governing law

set forth in [Supreme Court] cases' "; or (b) " 'the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent .' " *Maynard v. Boone*, 468 F.3d 665, 669 (10th Cir. 2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct legal rule from Supreme Court case law, but unreasonably applies that rule to the facts. *Id.* at 407–08. Likewise, a state court unreasonably applies federal law when it either unreasonably extends, or refuses to extend, a legal principle from Supreme Court precedent where it should apply. *House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008).

In reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). In order to obtain relief, a petitioner must show that the state court decision is "objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (O'Connor, J., concurring). "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their

independent judgment would conclude the state court misapplied Supreme Court law." *Maynard,* 468 F.3d at 671.

**Issues**

In his petition, Petitioner arguably contends that his right to effective assistance of counsel was denied in five ways: 1) failing to investigate potential alibi witnesses; (2) using at trial a redacted recording and transcript of Petitioner's interview with police instead of an unredacted copy; (3) failing to consult with Petitioner before agreeing to consolidate his three cases; 4) violating his rights to be present during trial and to confront the witnesses against him; and 5) failing to inform the court that due to medications Petitioner "was experiencing a mental break-down and other defects," which rendered him unable to assist in his defense, to give voluntary consent, or to knowingly waive his rights.

**Procedural Default**

Respondent asserts that the last issue noted above is not properly before the Court because it was not raised before the state appellate courts. This Court's review of the state court proceedings confirms that Petitioner raised no issue related to his mental incapacity either in his direct appeal, *State v. McClough*, 2007 WL 1964962 (July 6, 2007), or in his collateral appeal.[1] Therefore, Petitioner may not raise such issues on habeas review, as they are procedurally defaulted. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845

---

[1] The Court notes that Petitioner was evaluated at Larned before trial, and was found to be competent to assist in his defense.

5

(1999) (holding failure to give state courts one full opportunity to resolve constitutional issues by presenting claims in state appellate review process results in default). Accordingly, the Court will address only the other arguments noted above.

**Clearly Established Federal Law**

To prevail on a claim for ineffective assistance of counsel, Petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700.

In reviewing for deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, at 689. A petitioner demonstrates deficient performance by showing counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. Petitioner must show that counsels' decision was "completely unreasonable, not merely wrong." *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999).

"When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, __ U.S.__, __, 131 S.Ct. 770, 788 (2011). Thus Petitioner's burden

on this habeas review is to show that there is no reasonable argument that his trial counsel satisfied *Strickland's* deferential standard. *See White v. Medina*, 2012 WL 401518, *2 (10th Cir. 2012).

**Failing to Investigate Potential Alibi Witnesses**

Petitioner first contends that he made known to trial counsel the name and locations of witnesses he wanted to testify because they had first-hand knowledge of his innocence. Dk. 1, p. 6. He contends that his attorney did not interview the witnesses before trial or even try to contact them. Petitioner's affidavit, submitted with his petition, adds that had his attorney contacted the witnesses, he would have discovered that "he committed the crimes of theft and robbery." The affidavit lists the name of a witness as "Raymond E. Gardehire."

The traverse alludes to "the alibi witness" and alleges that had counsel located and subpoenaed Raymond E. Gardehire, facts would have shown he was at the crime scene on the date in question. Petitioner suggests that by comparing information collected by the Kansas crime labs, counsel could have proven Gardehire was the person who violated the law.

**KCOA's Holding**

The Kansas Court of Appeals found this claim to be conclusory and lacking evidentiary support.

> McClough's motion contained only conclusory allegations of ineffectiveness. There is no mention of any witness names or the proposed subject matter of testimony by any defense witnesses. In fact, during the preliminary hearing, McClough's counsel advised the

district court that McClough "could not give me specific examples" of where his trial counsel failed to investigate and interview witnesses for the defense and State. It is well-settled that "[a] movant has the burden to prove his or her K.S.A. 60–1507 motion warrants an evidentiary hearing; the movant must make more than conclusory contentions and must state an evidentiary basis in support of the claims or an evidentiary basis must appear in the record." *Trotter v. State,* 288 Kan. 112, Syl. ¶ 12, 200 P.3d 1236 (2009). No evidentiary basis has been presented in support of McClough's generalized assertions.

    Moreover, ineffective assistance of counsel is shown only where counsel's performance was constitutionally deficient *and* the deficient performance so prejudiced the defense as to deprive the defendant of a fair trial. *Harris,* 288 Kan. at 416, 204 P.3d 557. In McClough's motion and briefing, there is no mention made of the second prong of this test—that McClough sustained prejudice as a result of his attorney's claimed ineffectiveness. For all of these reasons we can find no error in the district court's summary dismissal of this claim.

*McClough*, 2010 WL 2978036, 3.

**Analysis**

This conclusion is "well within the bounds of a reasonable judicial determination." *Harrington*, at 789. Further, the record refutes Petitioner's assertion that his counsel never contacted Gardenhire. *See* R. I, 9 (" My client just asked me about the codefendant status on this case and if we have contacted him, Mr. Gardenhire. We had found him. He's on Community Corrections. We were speaking with him, so he is available if we need him.")

Additionally, nothing supports Petitioner's assertion that he had any alibi witnesses. Under Kansas law, an alibi witness is one who testifies that the defendant was at some place other than the place of the crime at the time of the crime charged. *See* K.S.A. 22-3218(1). Petitioner does not allege that Gardehire or any other named witness fits this bill.

8

"Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, at 691, But "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* An applicant who challenges his counsel's effectiveness because of his failure to investigate must establish that the decision not to investigate was unreasonable from counsel's perspective at the time the decision was made. *See Anderson v. Attorney Gen. of Kan.*, 425 F.3d 853, 859 (10th Cir. 2005). Petitioner has not met that burden.

**Using a Redacted Recording and Transcript**

Petitioner next contends that counsel did not listen to the entire tape recording of Petitioner's interview with the police, after his arrest. Petitioner asserts that if she had done so, she would have learned that the transcripts were incomplete. Petitioner contends that the tape could have been used to impeach police officers, to call additional witnesses, to gather additional information, and to show that Petitioner's *Miranda* rights had been violated. The record reflects that at the suppression hearing, a transcript of the tape was introduced because no one had the tape itself.

**KCOA's Holding**

The Kansas Court of Appeals addressed this issue, finding that Petitioner's counsel was familiar with McClough's interview and that Petitioner failed to show deficient performance or prejudice, stating:

> For his second issue, McClough alleges there "was no evidence in the file or record of the case which would have allowed the district court to make factual or legal findings absent an evidentiary hearing" about "counsel's failure to review the actual taped interview."
> The only reference to this issue that appeared in McClough's motion was the following sentence: "Trial counsel failed to listen to [McClough's] tape recorded statement and, instead, relied upon a transcription of his statement." On appeal, McClough does not explain how this fact, if true, shows ineffectiveness in this case. McClough also fails to respond to the district court's finding that the trial transcript demonstrated his trial counsel's familiarity with McClough's interview. In short, on this record, there is no showing of a "substantial issue or issues of fact" that warranted an evidentiary hearing. *Swenson v. State,* 284 Kan. 931, 935, 169 P.3d 298 (2007). Finally, once again, McClough ignores the prejudice prong of the ineffective assistance analysis in his appellate briefing, which is another basis to affirm the result below. *See Kingsley*, 288 Kan. at 395, 204 P.3d 562.

*McClough*, 2010 WL 2978036, 3-4.

**Analysis**

This conclusion is "well within the bounds of a reasonable judicial determination." *Harrington*, at 789.

Further, the record reflects that a suppression hearing was held, during which trial counsel showed her familiarity with the statements Petitioner made during his interview and her ability to cross-examine the interviewing officer as to the substance of those statements. R. Vol I, 62-77. At the suppression hearing, in which Petitioner's counsel sought to suppress

Petitioner's statements based on an alleged violation of his *Miranda* rights, his counsel inquired about Petitioner's interview. The Court found that Petitioner had executed a written waiver of his rights and had done so knowingly and voluntarily. Although Petitioner later terminated the interview, the record shows he thereafter voluntarily reinitiated contact with the police officer and gave additional admissible statements, as the district court found. R. I, 85-88. No showing of deficient performance has been made, thus no basis for a finding of ineffective assistance of counsel has been shown.

**Failing to Consult About Consolidation**

Petitioner next claims that his attorney never consulted him about consolidating the cases for trial, that his attorney knew Petitioner was on medications which precluded any voluntary consent, and that Petitioner would have objected to consolidation.

**KCOA's Holding**

The Kansas Court of Appeals found that Petitioner's counsel did consult Petitioner about consolidation, that consolidation was reasonable trial strategy, and that Petitioner showed no prejudice from consolidation:

> McClough now simply asserts that his attorney consolidated the three cases without his knowledge and consent.
> There are several problems with this particular claim of ineffectiveness. First, the record establishes that at the time the three cases were consolidated for trial, defense counsel advised the court, in the presence of McClough, that she had "discussed this" with McClough and that he "wanted to have them consolidated all in one case for trial." On appeal, McClough candidly admits: "Trial counsel informed

11

the trial court that the cases were being consolidated with consultation and consent with Mr. McClough." Notably, at that time, McClough did not object or make any statement contrary to his attorney's representations.

Second, McClough does not articulate what was ineffective in consolidating the cases for trial. At the hearing on the motion, McClough's counsel argued that "he is saying that had these cases not been consolidated, the approach that trial counsel may have taken may have been completely different." That is certainly true, although it does not necessarily prove that consolidation was necessarily ineffective. As a general rule, " '[w]here experienced attorneys might disagree on the best tactics, deliberate decisions made for strategic reasons may not establish ineffective counsel.' " *Bledsoe v. State,* 283 Kan. 81, 93, 150 P.3d 868 (2007). McClough has failed to assert, let alone show, how the strategy of consolidation was ineffective in this case. McClough has provided no basis to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." See *Bledsoe,* 283 Kan. 81, Syl. ¶ 5, 150 P.3d 868.

Third, similar to the other claims McClough made below and on appeal, he has failed to address the prejudice prong of the ineffective assistance issue. This failure alone is fatal to McClough's claim. *See Harris*, 288 Kan. at 416, 204 P.3d 557.

*McClough*, 2010 WL 2978036, at 4-5.

**Analysis**

This analysis is "well within the bounds of a reasonable judicial determination." *Harrington*, at 789. Additionally, consolidation of cases for trial is not an issue about which counsel is required to consult with her client. "Although there are basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client, the lawyer has—and must have—full authority to manage the conduct of the trial." *Taylor v. Illinois,* 484 U.S. 400, 417–418 (1988). Consolidation of

cases is firmly in the domain of trial strategy, so can be done by counsel even in the face of client disagreement.

**Violating his Right to be Present**

Petitioner, who was absent during large parts of his trial, contends that his attorney violated his right to be present. Petitioner tacitly admits that he waived his right to be present, but contends that his waiver was involuntary because unbeknownst to the court but know to his counsel, Petitioner was having a mental break-down and was not functioning in his right mind. Petitioner suggests that all acts by his attorney were thus done without Petitioner's knowledge or consent.

### KCOA's Holding

The Kansas Court of Appeals examined and found no merit to this claim, upholding Petitioner's waiver of his right to be present at trial.

> McClough undoubtedly had a right under the Sixth Amendment to the United States Constitution to confront witnesses, and under the Fourteenth Amendment to the United States Constitution to due process. See *State v. Mann,* 274 Kan. 670, 680, 56 P.3d 212 (2002). However, a defendant may also waive these rights. See *State v. Cromwell,* 253 Kan. 495, Syl. ¶¶ 1, 5, 7, 856 P.2d 1299 (1993). Kansas law also allows waiver: "In prosecutions for crimes not punishable by death, the defendant's voluntary absence after the trial has been commenced in such person's presence shall not prevent continuing the trial to and including the return of the verdict." K.S.A. 22–3405(1).
> 
> The trial record in the present case shows that McClough waived his right to attend the trial. He refused to attend in spite of repeated exhortations and opportunities to do so, and the trial court reasonably refused to "force" his presence. McClough was therefore not deprived of his right to confront witnesses, his right to due process, or any other constitutional or statutory right, including his right to effective assistance of trial counsel.

*McClough*, 2010 WL 2978036, 5.

**Analysis**

This ruling does not contradict United States Supreme Court precedent. It is a basic premise of our justice system that "in a prosecution for a felony the defendant has the privilege under the Fourteenth Amendment to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Snyder v. Massachusetts*, 291 U.S. 97, 105–106 (1934). But that privilege may be waived.

> In noncapital trials, a defendant may waive his right to be present if after the trial has begun in his presence, he voluntarily absents himself.

*Diaz v. United States*, 223 U.S. 442, 455 (1912). *See Fairey v. Tucker*, ___ U.S. ___, 132 S.Ct. 2218, 2220 (2012). The record reflects that Petitioner repeatedly, expressly, and personally told the court he did not wish to be present during the trial and wanted to go to his cell, and does not support Petitioner's claimed lack of mental ability to function rationally. It was most reasonable for the state court to conclude that Petitioner intentionally and voluntarily waived his right to be present. Accordingly, this provides no basis for habeas relief.

**Evidentiary Hearing**

The court finds no need for an evidentiary hearing. ("[A]n evidentiary hearing is unnecessary if the claim can be resolved on the record.)"

14

*Anderson v. Attorney Gen. of Kansas*, 425 F.3d 853, 859 (10th Cir. 2005) *Schriro,* 550 U.S. at 474 ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

**Certificate of Appealability**

Rule 11 of the Rules Governing Section 2254 Proceedings states that the court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. "A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has rejected the constitutional claims on the merits, a petitioner makes that showing by demonstrating that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). *See United States v. Bedford*, 628 F.3d 1232 (10th Cir. 2010). Petitioner has not met this standard as to any issue presented, so no certificate of appealability shall be granted.

IT IS THEREFORE ORDERED that the petition for habeas corpus relief under 28 U.S.C. § 2254 (Dk.1) is denied.

Dated this 29th day of January, 2013, at Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge